UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**EDRA D BLIXSETH**,<br><br>Debtor. | Case No. **09-60452-7** |
| **ATIGEO LLC** and **XPATTERNS LLC**,<br><br>Plaintiffs.<br><br>-vs-<br><br>**RICHARD SAMSON**, **EDRA D BLIXSETH**, **OPSPRING LLC**, **BLXWARE, LLC**, **JULIE BARVE**, **MATTHEW CROCKER**, **ERIK BERGSAGEL**, and **WESTERN CAPITAL PARTNERS LLC**,<br><br>Defendants. | Adv No. **09-00105** |

**MEMORANDUM of DECISION**

At Butte in said District this 7th day of January, 2011.

In this Adversary Proceeding, after due notice, a hearing was held January 4, 2011, in Butte on Plaintiffs' FED.R.CIV.P. 12(b)(6) Motion to Dismiss Count II of Western Capital Partners' Amended Third Party Complaint and Third Party Defendant Michael Sandoval's Motion to Dismiss Third Party Complaint of Western Capital Partners filed November 17, 2010, at docket entry no. 158. At Michael Sandoval's request, the Court also conducted on January 4,

2011, a pretrial conference on discovery issues. Plaintiffs Atigeo LLC ("Atigeo") and xPatterns LLC ("xPatterns") were represented at the hearing by Brian C. Park of Seattle, Washington; Third Party Defendant Michael Sandoval ("Sandoval") was represented by Roland Tellis and Patricia K. Oliver of Los Angeles, California and John H. Grant of Helena, Montana; Western Capital Partners LLC ("Western Capital") was represented by Robert W. Hatch, II of Denver, Colorado; and the Chapter 7 Trustee of Debtor's bankruptcy estate, Richard J. Samson, was represented by David B. Cotner of Missoula, Montana. The Court heard argument from they attorneys, but no witness testimony or exhibits were offered at the hearing.

## FACTS

Through their pleadings, various parties to this proceeding have alleged that in 2006, Sandoval was the CEO of xPatterns. Sometime in 2006, Sandoval persuaded Debtor to invest $10 million in xPatterns and also persuaded Debtor to purchase an equity interest in Opspring LLC ("Opspring") for $8 million. Following Debtor's investment in xPatterns, Sandoval allegedly took $5.75 million of the money Debtor invested in xPatterns and used such money to purchase real property located in Kirkland, Washington. Debtor claimed in prior court documents that Sandoval told her he only borrowed the money from xPatterns and intended to repay the money within 30 to 60 days. Debtor maintained she later learned that Sandoval borrowed more money than he represented and that Sandoval intended to repay the loan in three or more years, as opposed to 30 or 60 days.

Upon learning of Sandoval's alleged misrepresentations, Debtor sought to terminate her equity interest in xPatterns and to separate Opspring from xPatterns and Atigeo. To that end, Debtor entered into a March 31, 2007, Letter Agreement with xPatterns, Opspring and possibly

others.  The Letter Agreement, excluding signature pages and exhibits, is 8 pages.  In the Letter Agreement, xPatterns, through Sandoval, agreed to redeem the interests of the Blixseth Family in xPatterns for $2 million payable to Debtor within 120 days plus an additional $8 million payable to Debtor as follows: $1 million on March 31, 2009, $2 million on March 31, 2010, and the balance by March 31, 2011.

Sandoval guaranteed payment of the first $5 million, "no matter what may happen."  To further secure the payments due Debtor, Sandoval agreed to grant xPatterns a security interest in his Kirkland Property which was held by HMJZ LLC.  The Letter Agreement specifically provides that it shall be governed by the laws of the State of California.

In 2008, Debtor filed suit against xPatterns, Atigeo, Sandoval, Heather Sandoval, HMJZ LLC and others.  The fourth cause of action in Debtor's June 16, 2008, first amended complaint reads in relevant part:

> 45.  The Agreement contains the following provision, in paragraph 2, requiring the posting of security:
>
>> Sandoval hereby grants a security interest to xPatterns in the real property located in Kirkland, Washington and recently acquired by Sandoval and his wife (on behalf of himself and any entity affiliated with him and/or his wife that owns or controls such real property ("Sandoval Affiliate")), which security interests shall only be released by xPatterns in connection with a sale of such property where the proceeds of such sale are used by Sandoval and/or Sandoval Affiliate to return all funds he and/or Sandoval Affiliate owes to xPatterns and by xPatterns to satisfy the first $2 million portion of the xPatterns Obligations...
>
> (Emphasis added).
>
> 46.  The required security agreement was filed, in the form of a trust deed from HMJZ to xPatterns LLC on June 1, 2007.
>
> 47.  This security requirement was intended to protect the liquidity of

3

xPatterns and help ensure its ability to pay the $8 million debt xPatterns owes Blixseth.

48. Sandoval, Atigeo and xPatterns released the security interest in the subject property through a reconveyance of the Deed of Trust back to HMJZ, recorded on October 19, 2007.

49. Sandoval, Heather Sandoval, HMJZ, Atigeo and xPatterns breached paragraph 2 of the Agreement by:

>a. releasing the security interest even though the property had not been sold;

>b. releasing the security without Sandoval returning the funds he borrowed from xPatterns; and

>c. releasing the security before providing funds to satisfy the first $2 million portion of xPatterns' debt to Blixseth.

50. xPatterns' financial standing and ability to repay the debt it owes Blixseth have been harmed as a result of the release of security.

51. Atigeo, xPatterns, Sandoval, Heather Sandoval, and HMJZ have materially breached the Agreement, and Blixseth has been damaged as a result.

In a 12(b)(6) motion to dismiss dated July 11, 2008, Atigeo and xPatterns sought dismissal of Debtor's amended complaint. As to their request to dismiss Debtor's fourth cause of action, Atigeo and xPatterns framed the issue as: "Should the Court dismiss plaintiff's Fourth Cause of Action from breach of contract, where the contract at issue, by its terms, establishes that no breach has occurred and no damages have accrued?" *See* motion to dismiss at docket entry no. 157-2, p.27 (p.5 of the motion itself). Consistent with the issue as framed, page 13 of the motion continues, "even assuming *arguendo* that the security interest was improperly released, as plaintiff alleges in the amended complaint, the Fourth Cause of Action must be dismissed because the claim is not ripe and there are no damages." In a two-page proposed order prepared

by counsel for Atigeo and xPatterns, and without any analysis, the court in Washington summarily granted Atigeo and xPatterns' 12(b)(6) motion to dismiss, with prejudice.

Because of the 2008 proceedings in Washington, Atigeo and xPatterns argue that Western Capital's second cause of action is barred by the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion). Count II of Western Capital's third-party complaint reads in relevant part:

> 38. Upon information and belief, xPatterns, Sandoval and Atigeo have breached their obligations under the Letter Agreement by causing xPatterns to release its security interest in the Kirkland Real Property in violation of the Letter Agreement.
>
> 39. This breach by xPatterns, Sandoval and Atigeo has resulted in xPatterns being unable to satisfy its payment obligations to Blixseth under the Letter Agreement.
>
> 40. As a result of this breach by xPatterns, Sandoval and Atigeo, Blixseth has suffered contractual damages in an amount of not less than $2 million.
>
> 41. As the successor to Blixseth's contractual rights owed to it by xPatterns, Atigeo and Sandoval, Western Capital is owed the contractual damages xPatterns, Atigeo and Sandoval would otherwise owe to Blixseth under the Letter Agreement.

Plaintiffs claim in their pending Motion to Dismiss that "[t]he Washington court necessarily held that the Agreement's plain terms establish that the $8 million note was unsecured and that the collateral belonged to xPatterns and applied only to the first $2 million of the xPatterns Obligation to Blixseth, which was fully satisfied." Motion, p.6. This Court sees no such conclusion in the Washington court's August 22, 2008, order.

## APPLICABLE LAW

In addressing a Rule 12(b)(6) challenge, the Court accepts all nonconclusory factual allegations in the complaint as true (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007) and *Ashcroft v. Iqbal*, 556 U.S. \_\_\_, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009)),

5

and construes the pleading in the light most favorable to the nonmoving party. *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989). "[D]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Schneider v. California Department of Corrections*, 151 F.3d 1194, 1196 (9th Cir. 1998) (quoting *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)). To survive a motion to dismiss under FED.R.CIV.P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at ___, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570.) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*.

On the issues of res judicata (claim preclusion) and collateral estoppel (issue preclusion), federal courts must give a state court judgment the same preclusive effect to which the judgment would be entitled in the courts of the state in which it was entered. *Allen v. McCurry*, 449 U.S. 90, 94-96 (1980); *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993). The preclusive doctrines of "res judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but promote comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen*, 449 U.S. at 95-96.

To decide whether a prior state court action bars a subsequent federal action, the federal courts must look to the res judicata/claim preclusion principles of the state court in which the

judgment was entered. *Spoklie v. Montana*, 411 F.3d 1051, 1055-56 (9th Cir. 2005); *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 85-86 (1984).

Under Washington law, "[r]es judicata occurs when a prior judgment has a concurrence of identity in four respects with a subsequent action. There must be identity of (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made." *Sewer Alert Committee v. Pierce County*, 791 F.2d 796, 798-99 (9th Cir. 1986) (quoting *Rains v. State*, 100 Wash.2d 660, 674 P.2d 165, 168 (1983)). In addition, it is generally accepted that res judicata will not be applied if the party against whom the doctrine would be applied did not have a full and fair opportunity to litigate the matter in the state court. *See Montana v. United States*, 440 U.S. 147, 153 (1979).

Similarly, under Washington law, the doctrine of collateral estoppel/issue preclusion precludes relitigation of an issue previously adjudicated if the party estopped has already had a full and fair opportunity to present its case. *Hanson v. City of Snohomish*, 121 Wash.2d 552, 561, 852 P.2d 295 (1993). The requirements for application of the doctrine are: (1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice. *Hanson*, 852 P.2d at 300.

## DISCUSSION

Plaintiffs, in the pending 12(b)(6) Motion to Dismiss, argue that Count II of Western Capital's third-party complaint is identical to the fourth cause of action asserted by Debtor in her first amended complaint filed against the Plaintiffs, Sandoval, Heather Sandoval, HMJZ LLC and

others in the Superior Court of the State of Washington. Plaintiffs assert that Count II of Western Capital's third-party complaint should be dismissed because Debtor had a full and fair opportunity in prior litigation to litigate Count II on the merits. This Court does not agree.

This Court agrees that the two causes of action at issue are virtually identical. However, Debtor's fourth cause of action in the Washington litigation was summarily dismissed because no breach had occurred and no damages had accrued in 2008. The same may not hold true today.

In addition, Plaintiffs argue that Count II of Western Capital's complaint should be dismissed because Debtor's Chapter 7 Trustee made a representation on June 11, 2010, that he would voluntarily dismiss his count 12 because it was identical to what was pled in the Washington litigation. This Court is not bound by the Trustee's comments. Moreover, the Chapter 7 Trustee's previously asserted a twelfth cause of action which was identical to Debtor's fourth cause of action in the Washington litigation. In an Order entered June 11, 2010, this Court concluded that the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) did not bar the Trustee's claims in this Adversary Proceeding. The Plaintiffs are apparently seeking to relitigate the Court's June 11, 2010, Order, which this Court will not permit. In sum, this Court cannot conclude that Count II of Western Capital's third-party complaint should be dismissed at this time on a 12(b)(6) motion.

Sandoval, like Atigeo and xPatterns, seeks to dismiss Count II of Western Capital's complaint. Sandoval's Motion as it relates to Count II is denied for the reasons discussed above.

Both the Plaintiffs and Sandoval argue that Western Capital's claim for attorney's fees and costs is improper because Western Capital lacks a statutory or contractual right to such fees and costs. The Letter Agreement is silent as to fees and costs. Consequently, the Court agrees

that Western Capital's claim for fees and costs at this stage of the litigation is not proper.

Sandoval also requests that the Court dismiss Count III of Western Capital's complaint because Western Capital failed to comply with California Civil Code § 2845 by showing that it first pursued the principal, xPatterns, before seeking any relief from Michael Sandoval as the guarantor. Cal. Civ. Code § 2845 reads as follows:

> A surety may require the creditor, subject to Section 996.440 of the Code of Civil Procedure, to proceed against the principal, or to pursue any other remedy in the creditor's power which the surety cannot pursue, and which would lighten the surety's burden; and if the creditor neglects to do so, the surety is exonerated to the extent to which the surety is thereby prejudiced.

The Court does not read the foregoing section to definitively require a creditor to proceed first against a principal before proceeding against a guarantor. Rather, the Court reads the above section as permitting the surety/guarantor, upon demand, to require the creditor to pursue remedies first against the principal debtor. The Court does not read § 2845 as requiring Western Capital to plead that it made a demand for payment on Sandoval and in return, that Sandoval made a demand under § 2845 requiring Western Capital to first pursue other remedies against xPatterns as the principal debtor. This court reads § 2845 as a permissive statute that must first be invoked by Sandoval.

Sandoval asserts in his Motion that he informed Western Capital of the requirements of § 2845. Informing Western Capital of the requirements of § 2845 does not equate to a demand by Sandoval that Western Capital first seek payment from xPatterns. Given the skeletal facts, the Court is not persuaded that Sandoval has made the proper demand against Western Capital under § 2845. Therefore, the Court finds that Count III of Western Capital's complaint should not be dismissed at this early stage of the litigation.

For the reasons discussed above, the Court will enter a separate order providing as follows:

IT IS ORDERED:

1. Plaintiffs' FED.R.CIV.P. 12(b)(6) Motion to Dismiss Count II of Western Capital Partners' Amended Third Party Complaint filed November 17, 2010, at docket entry no. 156 is granted in part and denied in part; and the request for attorney's fees and costs in Western Capital Partner's Answer and Third-Party Complaint filed November 3, 2010, is denied; and

2. Third Party Defendant Michael Sandoval's Motion to Dismiss Third Party Complaint of Western Capital Partners filed November 17, 2010, at docket entry no. 158, is granted in part and denied in part; and the request for attorney's fees and costs in Western Capital Partner's Answer and Third-Party Complaint filed November 3, 2010, is denied.

BY THE COURT

/s/ Ralph B. Kirscher

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana