# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE | ) |
| | ) Case No. 09-60452 |
| EDRA D. BLIXETH, | ) |
| | ) Chapter 7 |
| Debtor. | ) |
| _____ | ) |
| | ) |
| ATIGEO LLC and | ) |
| XPATTERNS LLC, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adv. No. 09-00105 |
| | ) |
| RICHARD J. SAMSON, et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |
| | ) |
| WESTERN CAPITAL | ) |
| PARTNERS LLC, | ) |
| | ) |
| Third-party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL SANDOVAL, | ) |
| XPATTERNS LLC, and | ) |
| ATIGEO LLC, | ) |
| | ) |
| Third-party Defendants. | ) |
| _____ | ) |

MEMORANDUM OF DECISION - 1

## MEMORANDUM OF DECISION
_____

Before the Court are opposing motions for summary judgment. On March 8, 2018, third-party plaintiff Western Capital Partners LLC ("WCP") filed a motion for partial summary judgment seeking a determination that third-party defendant Michael Sandoval ("Sandoval") is personally liable as the guarantor of a debt. Adv. Doc. No. 398 ("WCP's Motion"). On that same day, Sandoval filed a motion for summary judgment seeking a determination that he cannot be held liable on any of WCP's claims because he is not personally liable on the debt. Adv. Doc. No. 400 ("Sandoval's Motion"). This Decision resolves both Motions.

**UNDISPUTED FACTS**[1]

Sandoval and Debtor Edra D. Blixeth ("Blixeth") agreed to end their business relationship in order to resolve a dispute between them, and they executed an agreement to that effect. *See* Adv. Doc. Nos. 399 at 58–72, 400-3 at 15–24 (the "Letter Agreement"). The Letter Agreement created a number of obligations on both sides. The terms of the Letter Agreement include:

- Blixeth's $10 million investment in one of Sandoval's companies, xPatterns, was converted to an installment loan repayable by xPatterns and memorialized by a note.

---

[1] The Court's recitation of undisputed facts is derived from the parties' submissions, and the Ninth Circuit Bankruptcy Appellate Panel's decision in *Western Captial Partners, LLC v. Atigeo LLC (In re Blixeth)*, 2012 WL 3234205 (9th Cir. BAP Aug. 9, 2012).

MEMORANDUM OF DECISION - 2

- Sandoval granted xPatterns a security interest in the real property Sandoval had purchased with a loan from xPatterns, and xPatterns agreed to maintain that interest until it satisfied the first $2 million of the debt owed to Blixeth.

- Sandoval and his other related entities relinquished all interests and control in another entity, Opspring, leaving Blixeth as the sole owner of Opspring.

- Blixeth agreed she would cause Opspring to pay Atigeo (the parent company of xPatterns and Opspring) a quarterly performance fee, the first $5 million of which would be used to reduce xPatterns' note to Blixeth.

- Opspring agreed to defend and indemnify Atigeo, xPatterns, and Sandoval in connection with ongoing litigation.

- The parties agreed (1) not to disclose the Letter Agreement's terms, (2) to keep confidential the other parties' trade secrets and confidential information, and (3) not to disparage each other. The parties agreed that any violation of those terms would entitle the injured party to injunctive relief.

- The parties agreed to return all property belonging to the other.

- The parties released all claims and causes against one another.

Additionally, the Letter Agreement provided:

> By signing this Letter Agreement, Michael Sandoval ("Sandoval") guarantees to the Blixeth family that the first $5 million portion of the xPatterns obligations will be paid when due, no matter what may happen. This is a continuing guarantee until the final payment in full of all of the first $5 million portion of the xPatterns obligations. Sandoval irrevocably waives any rights he may have against xPatterns by reason of subrogation, setoff, or otherwise.

Letter Agreement at 2 (the "Guaranty"). The Letter Agreement also contained a severability clause that provides:

MEMORANDUM OF DECISION - 3

> If any provision of this Letter Agreement, or the application thereof to any person or circumstances, shall for any reason and to any extent be invalid or unenforceable, the remainder of this Letter Agreement, or the application of such provision to the unaffected persons or circumstances, shall not be affected thereby but rather shall be enforced to the greatest extent permitted by law.

Adv. Doc. No. 400-3 at 22. Sandoval signed the Letter Agreement on behalf of himself, Opspring, and xPatterns. *Id*. at 9–10.

Additionally, on April 1, 2007, Sandoval signed an $8 million promissory note on behalf of xPatterns, agreeing to make a $1 million payment to Blixeth by April 1, 2009; a $2 million payment by April 1, 2010; and payment of the balance due, including annual interest at the rate of 8%, by April 1, 2011. Adv. Doc. No. 400-3 at 30–33 ("Promissory Note"). Of the $10 million total owed by xPatterns to Blixeth, the first $2 million was satisfied through agreed set-offs and a payment of $382,568 on March 10, 2008. The remaining $8 million owed under the Promissory Note, however, was never paid.

After the execution of the Letter Agreement, Blixeth guaranteed a $13,650,000 loan made by WCP. As collateral, Blixeth pledged certain personal property, which included her contractual rights in the Letter Agreement and the related Promissory Note. WCP eventually foreclosed its lien and, on March 22, 2010, became the owner of Blixeth's interests in the claims arising out of the Letter Agreement, including Sandoval's Guaranty. Adv. Doc. No. 399-6 at 2.

On March 26, 2009, Blixeth filed a petition for chapter 11 relief. The case

MEMORANDUM OF DECISION - 4

was converted to chapter 7 on May 29, 2009, and chapter 7 trustee Richard J. Samson ("Trustee") was assigned. On December 7, 2009, Atigeo and xPatterns filed an adversary complaint against Blixeth, Opspring, WCP, and others, based in part upon claims arising from Blixeth's failure to fulfill several agreements, including those outlined in the Letter Agreement.

On November 3, 2010, WCP filed an answer to the adversary complaint, including a third-party complaint against Sandoval, xPatterns, and Atigeo ("Third-party Defendants"), which was later amended. Adv. Doc. No. 154, 193-1 ("Third-party Complaint"). In the Third-party Complaint, WCP asserted a number of claims against the Third-party Defendants, including a claim that Sandoval breached the Guaranty. Adv. Doc. No. 193-1 at 9–10.

**DISCUSSION AND DISPOSITION**

    **A.**    **Evidentiary Issues**

As a preliminary matter, the Court must address several evidentiary issues raised by WCP in its March 22, 2018 objection to affidavits submitted in support of Sandoval's Motion. Adv. Doc. No. 408 ("Objection"). In the Objection, WCP argues five statements of fact asserted in the affidavits of Sandoval and Blixeth, Adv. Doc. No. 400-3 at 1–13, lack foundation and/or are hearsay. With regard to Sandoval's affidavit, WCP makes the following objections:

    (1)    "Sandoval's affidavit lacks foundation for the assertions that Opsprings 'earned revenue from business operations, including via a

MEMORANDUM OF DECISION - 5

> government contract.'"
>
> (2) "Sandoval's affidavit lacks foundation or evidence for the assertion that Blxware is a successor-in-interest to Opsprings."
>
> (3) "Sandoval's affidavit lacks foundation for the statement that 'no party to the Letter Agreement would have executed it without the exchange of promises and performance of obligations set forth in the Letter Agreement,' and any basis for such knowledge would be hearsay."

Adv. Doc. No. 408 at 2. And, with regard to Blixeth's affidavit, WCP argues:

> (4) "There has been no indication from Blixeth or her counsel that she plans to attend trial. . . . As such, her entire affidavit is hearsay and cannot be relied upon by Sandoval."
>
> (5) "Blixeth's Affidavit lacks foundation for her statements regarding the acts or omissions of Opsprings, including the allegation that Opsprings earned revenue from business operations and a government contract."

*Id.* The Objection does not contain citations to the Federal Rules of Evidence, Federal Rules of Bankruptcy Procedure, Federal Rules of Civil Procedure, or case law. This lack of citation requires the Court to divine the basis for the objections.

### 1. Foundation objections

The Court assumes the basis of WCP's arguments that the affiants' statements "lack foundation" are objections under Federal Rule of Evidence 602 to the affiants' lack of personal knowledge regarding the matters to which they testified. Federal Rule of Evidence 602 states in part, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness

MEMORANDUM OF DECISION - 6

has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."

With regard to objections (1) and (2), there is nothing in Sandoval's affidavit establishing he had personal knowledge of the means by which Opspring generated revenue after its March 31, 2007 transfer to Blixeth or whether Blxware was a successor in interest of Opspring. Those objections will be sustained.

With regard to objection (3), Sandoval provided that, "*[i]t is my understanding that* no party to the Letter Agreement would have executed it without the exchange of promises and performance of obligations set forth in such Letter Agreement. . . ." Adv. Doc. No. 400-3 at 5 (emphasis added). Sandoval's affidavit establishes that he was involved in the settlement of the claims between himself and Blixeth, which culminated in the creation and execution of the Letter Agreement. Sandoval's involvement in the events leading to the execution of the Letter Agreement are sufficient to establish his personal knowledge of the situation, enabling him to testify as to his "understanding" regarding whether the parties would have entered into the Letter Agreement had it contained different terms. WCP's objection (3) will be overruled.

With regard to objection (5), WCP appears to object to paragraph 11 of Blixeth's affidavit in which she testified:

> Opspring (and its successors in interest, including Blxware LLC), the Blixeth family, and I did not perform certain commitments set forth in

MEMORANDUM OF DECISION - 7

the Letter Agreement, as follows:

    a.    After March 31, 2007, Opspring . . . earned revenue from business operations, including via government contract. xPatterns was not paid any performance fees owed under the Letter Agreement;

    b.    On or about January 2008, Opspring received a request to defend and indemnify Atigeo, xPatterns and Mr. Sandoval in connection with the claims asserted against them in the Nevada Litigation. Opspring did not defend and indemnify Atigeo, xPatterns, and Mr. Sandoval in connection with the claims asserted against them in the Nevada Litigation[.]

Adv. Doc. No. 400-3 at 4.

Through execution of the March 31, 2007 Letter Agreement, Blixeth became the sole owner of Opspring. *Id.* at 3. Blixeth's undisputed ownership of Opspring is sufficient to support her knowledge of Opspring's operations, including the means by which it generated revenue and whether it fulfilled its obligations to Atigeo, xPatterns and Sandoval. WCP's objection (5) will be overruled.

### 2. Hearsay objection

Finally, WCP objects to Blixeth's affidavit in its entirety, based upon its assertion that "[t]here has been no indication from Blixeth or her counsel that she plans to attend trial." Adv. Doc. No. 408 at 2.

Federal Rule of Civil Procedure 56 (incorporated by Federal Rule of Bankruptcy Procedure 7056) requires, with regard to motions for summary

MEMORANDUM OF DECISION - 8

judgment, that assertions of fact must be supported by materials in the record, including "affidavits or declarations." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Nothing in this rule requires an affiant to express an intent to testify at trial in order for his or her affidavit to be considered for purposes of a motion for summary judgment, and WCP has provided no authority for such a proposition. The Court has not independently found such authority. WCP's objection (4) will therefore be overruled.

### B. Motions for Summary Judgment

This Court has explained:

> Summary judgment is governed by Fed. R. Bankr. P. 7056. Rule 7056, incorporating Fed. R. Civ. P. 56(c), states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide 'N' Dive Corp. (In re Aquaslide 'N' Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)).
>
> When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it

MEMORANDUM OF DECISION - 9

> believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103–04 (9th Cir. 1986), cert. denied, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986); Fed. R. Civ. P. 56(e). *See also Frederick S. Wyle Prof'l Corp. v. Texaco, Inc.*, 764 F. 2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).
>
> To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby*, 477 U.S. at 247–48, 106 S.Ct. at 2509. If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53.

*Bucher v. Hughes (In re Hughes)*, 488 B.R. 169, 176–77 (Bankr. D. Mont. 2013).

Here, the resolution of both WCP's and Sandoval's motions revolves

MEMORANDUM OF DECISION - 10

around whether Sandoval's Guaranty remains valid and enforceable. Sandoval argues that the Letter Agreement was intended to settle all claims among the parties and performance of all obligations was essential to the parties entering into the Letter Agreement, an argument supported by Sandoval's and Blixeth's affidavits. Sandoval asserts that Blixeth's failure to perform repudiated the Letter Agreement in its entirety, including Sandoval's Guaranty. Sandoval further argues that the Letter Agreement was an executory contract with performance remaining due on both sides at the time Blixeth filed bankruptcy and that neither Blixeth as a debtor in possession, nor the chapter 7 Trustee, assumed the executory contract within the time required by § 365(d), and it is, therefore, deemed rejected and breached.

WCP, on the other hand, relies on the severability clause in the Letter Agreement and argues that xPatterns' obligation to pay $10 million to Blixeth, and Sandoval's partial guaranty of such, is severable from the other terms of the Letter Agreement and, therefore, Sandoval is not excused from fulfilling the requirements of the Guaranty as a result of the failures of Blixeth and Opspring to fulfill their obligations under the Letter Agreement or Trustee's failure to assume the Letter Agreement as an executory contract.

In order to resolve the parties' motions, the Court must determine the severability of the provisions in the Letter Agreement. The contracting parties'

MEMORANDUM OF DECISION - 11

intent controls whether parts of a contract or lease, or part performance thereunder, can be separated and treated as independent legal obligations. *In re Plitt Amusement Co. of Washington, Inc.*, 233 B.R. 837, 845 (Bankr. C.D. Cal. 1999); *Hudson v. Wylie*, 242 F.2d 435, 447 (9th Cir. 1957); *Lewis v. Shell Oil* Co., 29 P.2d 413, 415 (Cal. 1934).

*Massie v. Pate (In re Pate)*, 262 B.R. 825, 830 n. 6 (Bankr. D. Idaho 2001), noted that summary judgment is generally inappropriate where questions of intent and state of mind are implicated. *See also Consol. Elec. Co. v. United States*, 355 F.2d 437, 438 (9th Cir. 1966) (reversing summary judgment, stating "[w]hen an issue requires determination of state of mind, it is unusual that disposition may be made by summary judgment"). Here the Court has conflicting evidence of intent. While there are the parties' affidavits expressing their intent in entering into the Letter Agreement, there are also the provisions of the Letter Agreement itself, which may be considered as evidence of the intent of the parties executing it.

The Court has taken significant time and care in combing the record to ascertain the arguments of the parties and evaluate the relevant, and purportedly undisputed, facts. However, having completed that review, the Court concludes that the Letter Agreement and the affidavits of record demonstrate that questions of material fact are in dispute. Therefore, under the guiding standards, both summary judgment motions should be denied.

MEMORANDUM OF DECISION - 12

**CONCLUSION**

WCP's Objection to the affidavits of Sandoval and Blixeth, Adv. Doc. No. 408, will be sustained in part and overruled in part. Additionally, there are issues of fact as to the intent of Sandoval and Blixeth in entering into the Letter Agreement. Based on those issues of fact, WCP's Motion, Adv. Doc. No. 398, and Sandoval's Motion, Adv. Doc. No. 400, will be denied. An Order will be entered accordingly.

DATED: June 21, 2018

TERRY L. MYERS
U. S. BANKRUPTCY JUDGE